IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **WILLIE BANDY,** | ) | **CASE NO. 1:08cv2780** |
| | ) | |
| Petitioner, | ) | **JUDGE SOLOMON OLIVER, JR.** |
| | ) | |
| v. | ) | |
| | ) | **MAGISTRATE JUDGE GREG WHITE** |
| **KEITH SMITH, Warden,** | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |

Petitioner, Willie Bandy ("Bandy"), *pro se*, challenges the constitutionality of his conviction in the case of *State v. Bandy*, Cuyahoga County Court of Common Pleas Case No. CR 417888. Bandy filed his Petition for Writ of Habeas Corpus (Doc. No. 1) pursuant to 28 U.S.C. § 2254 on November 20, 2008.[1] On April 13, 2009, Warden Keith Smith ("Respondent") filed an Answer/Return of Writ. (Doc. No. 10.) Bandy filed his Traverse on June 10, 2009. (Doc. No. 12.) In addition, he filed a motion for appointment of counsel (Doc. No. 13), a motion for leave to set a briefing schedule (Doc. No. 14), a motion to authorize procedures to resolve the factual dispute (Doc. No. 15), and a motion for leave to supplement the record. (Doc. No. 16.) This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2. For reasons set forth in detail below, it is recommended that Bandy's Petition be dismissed as time-barred.

### I. Facts

The Court of Appeals, Eighth Appellate District, Cuyahoga County, Ohio summarized the facts underlying Bandy's offense in a decision stemming from the direct appeal of his co-

---

[1] Under the mailbox rule, the filing date for a *pro se* petition is the date that a petitioner delivers it to prison authorities for mailing. *See Houston v. Lack*, 487 U.S. 266 (1988).

defendant, Maurice Moss:

> [*P1] Defendant-appellant, Maurice Moss, appeals his jury trial conviction for murder in violation of R.C. 2903.02, a first degree felony. On a Saturday in December of 2001, defendant was visiting his friend of twenty years, Willie Bundy [sic]("friend"). They had been drinking all afternoon at the house of his friend's mother. This friend shared the house with his mother, Mary Jean Anderson ("mother"), his seven-year-old-son, and a boarder ("victim") who rented a room from his mother.
>
> [*P2] In the evening, they joined the mother at a party across the street and continued drinking. When they left the party, they went to a neighborhood bar where they continued to drink. They finally returned the mother to her home and the two men went to a crack house and shared some crack. When they got back to the mother's home, she called out to them that she had fallen on the steps and broken her ankle. After they helped her up the stairs to her bed, defendant confronted the victim, who was then on the way to the bathroom.
>
> [*P3] Defendant, the friend, and the victim somehow all ended up in the bathroom together. Defendant started hitting the victim because the victim did not help the mother get up after she had fallen. The friend joined in this fight and pulled a "small dagger" from his pocket. He stabbed the victim thirteen times. When the victim fell into the bathtub, the friend kicked him and stomped him while defendant had him in a stranglehold.
>
> [*P4] Defendant told the friend to get some garbage bags, saying, "I've done this before." Defendant then told the friend to bring his car around and they loaded the victim into the back seat of the car. They drove to Euclid Beach where they threw the body over a cliff into a ravine because they could not lift it high enough to throw it in the lake. Several days later, a bus driver was standing in the parking lot above the ravine during a layover when he spotted the body and notified his supervisor, who called the police. After the murder was reported in the paper, the friend and his mother junked the car, supposedly because the frame was broken. The friend was arrested a few days later in the presence of defendant. Defendant was instructed to come to the police station the next day, but failed to appear. He was later arrested.
>
> [*P5] The friend gave a signed statement to the police admitting his part in the murder and implicating defendant. The friend later pleaded guilty to murder and, in exchange for the possibility of parole five years early, agreed to testify against defendant. His testimony was inconsistent and also contradicted his statements to the police. The mother also testified, and her testimony contradicted that of the friend in several places. As to the actual fight in the bathroom, however, their testimony agreed.

*State v. Moss*, No. 81582, 2003 Ohio App. LEXIS 3048, at **1-3 (Ohio Ct. App. June 26, 2003).

## II. Procedural History

### A. Conviction

On December 27, 2001, a Cuyahoga County Jury indicted Bandy on one count of aggravated murder pursuant to Ohio Revised Code ("O.R.C.") § 2903.01.  (Resp. Exh. 1.)  On

May 23, 2002, represented by counsel, Bandy plead guilty to one count of murder as defined in O.R.C. § 2903.02. (Resp. Exh. 3.) As part of a plea agreement, he agreed to testify against co-defendant Maurice Moss. *Id*. On June 4, 2002, Bandy was sentenced to fifteen years to life imprisonment, the only sentence authorized by statute. (Resp. Exh. 4.) The journal entry was docketed June 7, 2002. *Id*. According to the docket appearance, on September 30, 2002, he filed a *pro se* "motion for the appointment of appellate transcript."[2] (Resp. Exh. 10-7, p. 17.)

### B. Direct Appeal

Bandy did not timely appeal his conviction to the Eighth District Court of Appeals ("state appellate court"). Instead, on April 21, 2008, Bandy, *pro se*, filed a motion for leave to file a delayed direct appeal and also requested appointment of counsel. (Resp. Exhs. 5-7.) On April 23, 2008, the court summarily denied both motions. (Resp. Exhs. 8-9.)

On June 30, 2008, Bandy, *pro se*, moved for leave to file an untimely delayed appeal in the Ohio Supreme Court, (Resp. Exhs. 10-11) which was denied on September 10, 2008.[3] (Resp. Exh. 12.)

### C. Federal Habeas Petition

On November 20, 2008, Bandy filed the instant Petition and asserted four grounds for relief:

> **Ground One**: Petitioner was convicted by the failure of the prosecution and petitioner's attorney to disclose evidence favorable to the petitioner.
>
> **Supporting Facts**: Petitioner's right was deprived under the United States and Federal Constitutional laws. Petitioner demonstrated in his brief of clear-cut prosecutorial misconduct expose corruption by the petitioner's lawyer who accepted money to be the investigator in the petitioner's murder trial. Exculpatory evidence, physical evidence, DNA evidence, scientific evidence and the jury waiver was all withheld. Petitioner discovered 6 years later that the male

---

[2]The record is not clear as to what Bandy was seeking in this motion. Upon review of the docket, the court did not rule on this motion.

[3]Bandy asserted in his motion to the Ohio Supreme Court that prison officials did not timely mail his motion to the court. The Ohio Supreme Court has expressly rejected the mailbox rule. *State ex rel. Tyler v. Alexander*, 52 Ohio St.3d 84, 555 N.E.2d 966 (1990). In Ohio, a petition is considered filed when filed with the Clerk of Court, not when delivered to prison officials for mailing. *State v. Williams,* 157 Ohio App.3d 374, 377 (8th Dist. 2004).

3

died by strangulation and petitioner discovered that withheld evidence by a newspaper clipping, but all respect goes to the victim in this corrupt case at bar.

**Ground Two**: Petitioner was convicted by a violation of the privilege against self-incrimination.

**Supporting Facts**: Petitioner never had a right to a trial by jury and did not acknowledge any jury waiver or sign a waiver in open court and was never given the opportunity to obtain witnesses in my favor or confront any witnesses against me, and the trial court did not find the petitioner guilty beyond a reasonable doubt and violated the petitioner's privilege against self-incrimination, 5, 6 14 Amendments of the constitution. The coroner was never on the scene to declare the male was dead on arrival, because EMS had moved the male from the location.

**Ground Three**: Petitioner's plea of guilty was unlawfully induced and was not made voluntarily.

**Supporting Facts**: The petitioner should be entitled to plead anew if a district court accepts his guilty plea without fully adhering the voluntariness of the petitioner's plea and petitioner should be afforded the opportunity to plea anew when the petitioner's original record is inadequate. The trial judge in this case at bar should have taken the few minutes necessary to inform the layman of the law his rights and determined whether the petitioner had understood the charge and action he was taking before sentencing the petitioner to years imprisonment. With all due respect, the judgment of conviction and sentence rendered by the trial court should be reversed and set aside and remanded back to trial court to permit the petitioner to plead anew to the charge for which he was convicted and sentenced for further proceeding as by law.

**Ground Four**: Petitioner was convicted by ineffective assistance of counsel.

**Supporting Facts**: Petitioner's attorney Mr. Thomas O'Malley accepted $500.00 to be the investigator in the petitioner's murder trial, petitioner has demonstrated the transaction made on the docket sheet, inside his brief filed to this Honorable United States District Court for the Northern District of Ohio.

(Doc. No. 1.)

Before the Court can review the merits, Bandy's Petition must survive Respondent's claim that it is time-barred or Bandy must show that equitable tolling is applicable. *See Keenan v. Bagley*, 400 F.3d 417, 420 (6th Cir. 2005).

### III. Statute of Limitations

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254, because Bandy filed his habeas petition after the effective date of the AEDPA. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). In the AEDPA, Congress enacted a period of limitations for the filing of habeas petitions. The statute provides, in relevant

part:

> (d)(1) A one year period of limitations shall apply to the filing of an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of-
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> >
> > (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d)(1), (2). (2009)

### A. Direct Review, § 2244(d)(1)(A)

Respondent asserts that Bandy's Petition is time-barred because it was not filed within the one-year limitations period. He contends that Bandy's allegations occurred at or before the entry of his guilty plea and that Bandy has not demonstrated that the claims could not have been discovered with due diligence before completion of direct review. Therefore, Respondent argues that Bandy's conviction became final under 28 U.S.C. § 2244(d)(1)(A) on July 8, 2002, when the 30-day period for filing a direct appeal with the state appellate court expired. From that date, he had one year, or until July 9, 2003, to timely file a petition. Bandy's Petition was not filed until November 20, 2008. Therefore, absent an alternate beginning date for the period of limitations or the applicability of tolling provisions, Bandy's Petition is untimely.

### B. Impediment, §2244(d)(1)(B)

Bandy argues in his Traverse that his constitutional rights were violated when the trial court did not advise him of his appellate rights. The Sixth Circuit has held that a state court's

failure to advise a petitioner of his appellate rights at sentencing is not a state-created impediment that prevents him from filing a federal habeas petition. *Miller v. Cason*, 49 Fed. Appx. 495, 497 (6th Cir. 2002) ("Although [failing to give notice of his appeal rights at sentencing and not timely appointing counsel to perfect a belated appeal] may have interfered with Miller's direct appeal in state court in the early 1990s, Miller has failed to explain how the action prevented him from filing his federal habeas corpus petition until 2001.") Bandy alleges constitutional violations but he does not explain how these actions prevented him from filing his federal habeas corpus petition until 2008. In light of the foregoing, Bandy is not entitled to a delayed calculation of the statute of limitations under § 2244(d)(1)(B).

### C. Factual Predicate, § 2244(d)(1)(D)

Under § 2244(d)(1)(D), the Sixth Circuit stated: "The proper task in a case [in which a petitioner was not advised of his appellate rights by the state court] is to determine when a duly diligent person in petitioner's circumstances would have discovered [his right to an appeal.]" *DiCenzi v. Rose*, 419 F.3d 493, 470 (6th Cir. 2005). The question of due diligence is fact-specific and depends on various considerations such as the petitioner's post-conviction conversations with his lawyer and the conditions of his confinement after sentencing. *Id*. at 471. The *DiCenzi* Court also clarified that "the petitioner bears the burden of proving that he exercised due diligence, in order for the statute of limitations to begin running from the date he discovered the factual predicate of his claim pursuant to 28 U.S.C. § 2244(d)(1)(D)." *Id.* (*citing Lott v. Coyle*, 261 F.3d 594, 605-606 (6th Cir. 2001)).

In *DiCenzi*, the district court briefly addressed the petitioner's diligence noting that he filed his habeas petition four years after his conviction became final, that he "apparently took no action" for a long period of time, and that he could have asked the public defender or a court about his appellate rights at any time but did not do so. *Id*. at 470-471. The Sixth Circuit remanded the matter and ordered the district court to conduct an analysis of DiCenzi's diligence. *Id*. at 472.

Here, Bandy argues the same alleged constitutional claim as in *DiCenzi*, a due process violation arising from the trial court's failure to advise him of his appellate rights. In order to

6

satisfy the AEDPA statute of limitations under § 2244(d)(1)(D), Bandy must establish that, through the exercise of due diligence, he could not have discovered his right to challenge his 2002 sentence more than one year prior to November 20, 2008, the date on which he filed this habeas petition.

When Bandy filed his motion for delayed appeal in the state appellate court in April 2008, he stated in his memorandum in support that he did not know that he had forfeited "all [his] rights" to appeal, but then noted that "[t]wo years ago [he]started [his] own research about [his] case, and the law. . . ." (Doc. No. 10-7, p. 21.) Bandy does not provide the Court with the exact date when he learned of his appellate rights. It appears from Bandy's statement though, that, through his own research, he learned of his appellate rights some time in 2006. More importantly, upon reviewing the record, the Court notes that on September 30, 2002, Bandy filed a *pro se* "motion for the appointment of appellate transcript at state's expense." (Doc. No. 10-7, p. 17.) It appears that Bandy was aware of his appellate rights prior to November 20, 2007.

Bandy also asserts a second factual predicate. He contends that exculpatory evidence was withheld from him as to the cause of the death of the victim, which he did not discover until six years after his conviction. Specifically, he asserts that the victim died from asphyxiation, not from the stab wounds Bandy inflicted, and alleges that the victim was still alive when the rescue squad arrived on the scene. (Doc. 12-2, p. 42, 43.) Bandy maintains that due to these factors, the statute of limitations did not commence until the Ohio Supreme Court denied his delayed appeal on September 10, 2008. Respondent contends that if Bandy had exercised due diligence he would have discovered six years ago the victim's cause of death, as stated by the appellate court's opinion in his co-defendant's appeal:

> The coroner testified that the cause of death was a combination of several factors: strangulation, multiple stab wounds, blunt impacts to the head and trunk, and skeletal and fisceral injuries. The friend testified that defendant had hit the victim a number of times and had choked him. Because one of the causes of death was strangulation and one was blunt trauma, like a punch or a kick, the jury, if it believed the testimony of the friend, could reasonably conclude that the evidence showed beyond a reasonable doubt that defendant murdered the victim.

*State v. Moss*, 2003 Ohio App. LEXIS 3048, at *4. Bandy appears to argue that strangulation was the cause of the victim's death. It is clear that the death of the victim was caused by a

7

combination of factors, including the multiple stab wounds that Bandy admittedly inflicted. All of this was available to Bandy, and with the exercise of due diligence, could have been discovered at any time before and after his plea. Therefore, Bandy's argument that he did not learn of this evidence until 2008 is without merit.

### D. Calculation of Statute

The one-year period commenced on June 7, 2002, when Bandy's sentence was journalized. Since Bandy did not seek a timely direct appeal within 30 days as required by Ohio App. R. 4(A), that period expired on July 8, 2002. *See DiCenzi v. Rose*, 452 F.3d 465, 469 (6th Cir. 2006) (statute begins to run with expiration of Ohio R. App. 4(A's) time to appeal); *Bronaugh v. Ohio*, 235 F.3d 280, 282 (6th Cir. 2000)(court applies Fed. R. Civ. P. 6(a) in computing time). Thus, the period of limitations to file his federal habeas petition began running on July 9, 2002, "the expiration of the time for seeking [direct] review," and ran uninterrupted through July 9, 2003, as Bandy did not file an application for post-conviction or other collateral review within the one-year period.

Motions for delayed appeal in Ohio's courts may toll the statute of limitations under 28 U.S.C. § 2244(d)(2) but are not part of the direct appeal process for purposes of 28 U.S.C. § 2244(d)(1)(A). *See Searcy v. Carter*, 246 F.3d 515, 519 (6th Cir. 2001); *DiCenzi*, 452 F.3d at 468. A post-deadline motion to file delayed appeal under Ohio App. R 5(A) has no effect on the one-year period of § 2244(d)(1)(A). *Winkfield v. Bagley*, 66 F3d. Appx. 578, 582 (6th Cir. May 28, 2003), *cert denied* 540 U.S. 969 (2003). Once the one-year period has run, it cannot be restarted or retriggered by subsequent state court proceedings. *See Searcy*, 246 F.3d at 519 (delayed appeal under Ohio App. R. 5(A)). Since the time limitation had previously expired, Bandy's subsequent collateral proceedings are inconsequential. Therefore, the one-year period began running on July 9, 2002, and continued to run for 365 days through July 9, 2003. Bandy's federal petition filed in November 2008 is untimely.

Even if the Court considers § 2244(d)(1)(D), Bandy's Petition is untimely. He clearly had knowledge of his right to appeal prior to November 2007 when, in 2002, he filed a motion requesting a transcript and, in 2006, he began his own research.

8

### E. Equitable Tolling

The Court may apply the doctrine of equitable tolling, which preserves a plaintiff's claims when strict application of the statute of limitations would be inequitable. Respondent contends that Bandy has not established any basis required for equitable tolling.

Failure to file a habeas petition within the period prescribed by § 2244(d)(1)(A)-(D) is not jurisdictional, and is subject to equitable tolling. *See Allen v. Yukins*, 366 396, 401 (6th Cir. 2004) *cert. denied*, 543 U.S. 865 (2004). To benefit from equitable tolling, a petitioner must show that he has been pursuing his rights diligently, and that some extraordinary circumstance stood in his way. *Lawrence v. Florida*, 549 U.S. 327 (2007) (*quoting Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). The Sixth Circuit has found equitable tolling to be appropriate in two circumstances: (1) when a petitioner makes a credible showing of actual innocence; and (2) under the test established in *Dunlap v. United States*, 250 F.3d 1001 (6th Cir. 2001), *cert. denied*, 534 U.S. 1057 (2001); *see also Souter v. Jones*, 395 F.3d 577, 602 (6th Cir. 2005). The *Dunlap* test consists of five factors: (1) a petitioner's lack of notice of the filing requirement; (2) a petitioner's lack of constructive knowledge of the filing requirement; (3) diligence in pursuing one's rights; (4) absence of prejudice to the respondent; and (5) a petitioner's reasonableness in remaining ignorant of the legal consequences for filing his claim. *Dunlap*, 250 F.3d at 1008 (*citing Andrews v. Orr*, 851 F.2d 146, 152 (6th Cir. 1988)). "This list of factors is not necessarily comprehensive, and not all factors are relevant in all cases." *Vroman v. Brigano*, 346 F.3d 598, 605 (6th Cir. 2003). The Sixth Circuit has also emphasized that "absence of prejudice is a factor to be considered only after a factor that might justify tolling is identified." *Id.*

The Sixth Circuit has held that the state court's failure to advise a petitioner of his appellate rights does not alone justify equitable tolling. *Miller v. Cason*, 49 F.3d. Appx. 495, 497 (6th Cir. 2002). As noted in *Miller*, the state court's failure to notify a petitioner of his appellate rights "may have interfered with [the petitioner's] direct appeal in state court . . . but [he] has failed to explain how the actions prevented him from filing his federal habeas petition." *Id*. *See also, Santiago v. Hurley*, 2:05CV560, 2006 WL 3196295 at *6 (S.D. Ohio Nov. 2, 2006)

Furthermore, lack of knowledge of applicable law, including the AEDPA, is not sufficient to justify equitable tolling. *See Allen v. Yukins*, 366 F.3d 396, 403 (6th Cir. 2004) (*citing Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991)). Likewise, the fact that the petitioner is acting *pro se* and is ignorant of applicable procedures is not "an excuse for prolonged inattention when a statute's clear policy calls for promptness. . . ." *Johnson v. U.S.*, 544 U.S. 295, 311 (2005).

Bandy does not address the reason he failed to file a timely federal habeas petition. He believes the Petition he filed was timely as it was within one year of the Ohio Supreme Court's denial of his delayed appeal. However, as outlined in *Miller*, *Allen* and *Johnson*, equitable tolling is not applicable to Bandy's Petition.

### IV. Other Pending Motions

On June 10, 2009, Bandy filed a motion for appointment of counsel (Doc. No. 13), a motion for leave to set a briefing schedule (Doc. No. 14), a motion to authorize procedures to resolve the factual dispute (Doc. No. 15), and a motion for leave to supplement the record. (Doc. No. 16.) He also requested an evidentiary hearing. As the Court is recommending that Bandy's Petition be dismissed, the Court also recommends that these motions be denied as moot.

### V. Conclusion

For the foregoing reasons, the Magistrate Judge recommends that Bandy's Petition be dismissed.

    s/ Greg White
United States Magistrate Judge

Dated: July 27, 2009

### OBJECTIONS

**Any objection to this Report and Recommendation must be filed with the Clerk of Courts within ten (10) days after the party objecting has been served with a copy of this Report and Recommendation. Failure to file objections within the specified time may waive the right to appeal the District Court's order. See *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**